Alright, it was about four thirty minutes now in session for Honorable Justice Jessie G. Ray and Assistant Prosecutor. Good morning ladies and gentlemen. Have a seat please. And can we call the next case? And read the Commitment of Johnny Butler. Okay, with counsel sure going to argue this matter, please approach the podium and then state your name for the record and what party you're representing. Good morning, Your Honors. Assistant Attorney General Warren Schneider representing the people of the state of Illinois. Good morning, Michael Johnson representing Johnny Butler, the appellant. Great. Alright, fifteen minutes apiece and time for rebuttal. Mr. Chairman, may I reserve two minutes for rebuttal? Sure, yeah. So counsel, is Mr. Butler still a sexually violent person? Legally speaking, yes he is. He's living in the community in the Chicagoland area. He's on conditional release still. Okay, that's still active. May it please the court? Counsel, the legislature intended for the conditional release of sexually violent persons with a specific set of twenty-eight mandatory conditions of release, with giving the trial court discretion to adopt additional conditions if necessary. Does the trial court have any discretion to modify any of the mandatory conditions? Where do they always have to be there no matter what and the only sort of modifications they can make is by adding on additional conditions? Well, our position is that the trial court could not modify. At the very least, we raised two conditions that the trial court should not have modified. So we do not believe the trial court had discretion to modify at least those two conditions relating to employment and to relationships. But it's also clear here that the trial court... So you don't think the twenty-eight can be modified in any regard? The legislature established that they shall be imposed. So in particular, I don't think we need to get to the point of saying that they can never be modified because in this case, there was never any evidence or reasons to modify them given to the court. The court was simply presented with a boilerplate plan that was prepared by the Department of Human Services through its contractor, a private contractor, Liberty Healthcare Corporation. And in this case... I have a question that I'm going to ask both of you. One of the problems that I have is that the conditional release plan includes another SVP's case number. It appears that they just followed someone else's plan and they just filled in the dots here or the spaces. Does DHS use basically the same plan for every person that they're working with? Yes, and that's exactly what they did in this case. Don't we have a difference in terms of some person's condition as opposed to another person's condition? I mean, why is the same plan going to work for everybody across the board? It does not. Our argument is the only person it works for is through Liberty Healthcare Corporation. It does not work for the community, and it does not work for Johnny Butler or any of the respondents who have been subject to this incredibly onerous and burdensome plan, especially where you have a respondent like Johnny Butler who does not have any sort of pedophilic disorder, does not have any prior offenses against children, and yet they still want to impose these same conditions that the appellate court found appropriate for the respondent in the case of Daniel Holt because that respondent did have the pedophilic disorder diagnosis and did have offenses against children. Now... Are you talking about the holiday one? That's one example, yes. To my point is that there was no restriction in the plan regarding Mr. Butler going to the UIC campus, which appears to be somewhere where he would frequent when he was out before he was incarcerated. That's correct, Justice Reyes. And... So don't you think there should be an individualized condition that he not enter the UIC campus? Arguably, right? Arguably that would have been an appropriate condition to impose. I think we probably would have said that it's not necessary, but we don't have to go down that road. If that was imposed within a discretionary context, that would be hard to argue against. As long as the trial court had made an individualized fact finding about that. Yes. On the record. That's your position. It's okay to have these individualized conditions as long as the trial court makes these individualized fact findings pertaining to this particular sexually violent person. Yes. So let me ask you this. What's the primary purpose of these plans? The primary purpose... Is it for society or is it for the individual that's incarcerated? Well, it's both. I mean, certainly it's both. It has to address their needs to be reintegrated into the community, which is why it talks about the statute itself has them being employed at approved occupations. And in this case, the court modified the plan to not allow employment unless that was first approved. So this plan didn't meet its primary purpose? That's correct. That's correct. Instead, the trial court, when it said when it was imposing the plan twice, is that these conditions come with the territory, meaning that they are inevitable and that they have to be imposed in every case. And referring back to the University of Illinois Chicago campus, that's a territory of 250 acres that was not considered by the trial court, that was not proposed by DHS, and that is not part of his plan. And which was something that was known in terms of his preference or whatever you might want to call it as a territory or an area that he would frequent. Yes, albeit in the 1970s, but yes. And is he conditionally discharged in close proximity to this area? He's not in Chicago. He's in the Chicago suburbs. He's in the near west suburbs. One of the 28 that was modified, though, didn't it kind of benefit him by saying if he's capable of doing it? Because he's had prostate surgery, and he has mobility issues and chronic pain in his legs, and he's old. Yes. He's 70, right? Yes. So why would you argue that that wasn't an appropriate modification to one of the mandatory conditions? Well, first, because, I mean, look, if he's not capable of working, we're obviously not going to be in favor of a requirement that he work, even though he's not capable of it. But this is just part of the boilerplate that comes in every case. That's our main objection to that part of it. Our objection is not so much to the capable part of that requirement, but that all employment be approved. And the statute distinguishes between employment and occupation. And so the statute requires that he work at a DHS-approved occupation, which could be, for example, a forklift operator. And then the employment doesn't have to be approved. He could work at any number of occupations. It's an employer that might employ a forklift operator. Yes. Yes. And otherwise, to read it as requiring approval for everything is to eliminate the distinction between employment and occupation in the statute, and that only one of those is required. So are you saying that the statute doesn't permit or allow for individualized conditional plans? No. But at the very least, we have these 28 mandatory conditions. And if the trial court is going to modify those, there has to be some evidence presented as to the need for modification. For example, we could have come in and said, you know, he's really not capable of working. Maybe he's going to be on receiving Social Security disability or retirement benefits or some other form of income to support himself. And we could say, well, perhaps we can modify or add a condition saying that as long as he's able to support himself, that that condition is not going to be required for him. So you're arguing that there should be like a special showing or some type of basis for each condition? Yes. Okay. Yes. There should have been an individualized basis instead of what we have here is the boilerplate plan. And going back to the Daniel Holt case, Justice Johnson, in her partial concurrence and partial dissent, noted that that plan appeared to be a boilerplate or preprinted generic stock plan. We have the exact same thing here where the Holt plan said revised July of 2019 and Mr. Butler's plan said it was revised July of 2022. And, again, it didn't even have the right case number because they just went back to somebody else's case, which we've also put in the appendix, and provided the same conditions for that person. And what would be the legal basis for this other than the Holt case, looking at the Holt case? Section 40 of the SVP Act requires that commitment orders be individualized for the committed person and also requires that they be imposed in the least restrictive manner. And that was not done in this case, certainly. And whose responsibility does this really fall on? Because, I mean, you know, trial judges are not, even if they sit in these assignments, they're not experts in this area in terms of making some type of, you know, psychological evaluation and determination. So who carries the burden here? Well, certainly the state would have the burden through the Department of Human Services to have the burden of imposing additional conditions if the respondent wanted additional conditions to be imposed, such as what I mentioned earlier about being capable of work. Then the respondent would have the burden. But basically whoever is trying to add on conditions then would be responsible for having some evidence to support them. And is that done through expert testimony with experts relying or referencing a claim? It could be. I don't think, I don't know that the court needs to decide that expert testimony is necessary in every case. I mean, going back to the example of the Lexington campus. But it is a court's prerogative to decide that. Yes. The court could decide to require expert testimony on a topic, particularly if it's one that calls for specialized knowledge. Well, especially if the court is going to have individualized plans and you have to make a determination in terms of the basis for each condition, wouldn't expert testimony help in that regard? Yes. Absolutely. Yes. The other issue that we've raised is with respect to the Internet condition. The Internet condition was found unconstitutional in the Holt case. And the state has suggested, has conceded on appeal that it is unconstitutional, even though they defended it in the trial court, and asked for a very generic remand instructions to revise the condition consistent with Holt. But that has already been the law since 2022. And the state failed to do it. The Department of Human Services failed to do it. And Liberty Health Care failed to do it. So we would ask, as we did in our reprimary, that the court give more specific directions as to what purposes of Internet should be allowed on remand to avoid further litigation on that topic. And Liberty Life Care, are they independent contractors? Are they a state agency? You know, what is their position there? Their position is that they have a contract with the Department of Human Services, which falls under Section 40 of the SVP Act, to provide some of the services like supervision and monitoring. And so they're a private corporation, for-profit corporation, that has that contract with the Department of Human Services. And under the statute, Section 40, the DHS is allowed to contract out that sort of service. But what they cannot do and what they cannot contract out is the imposition of the conditions of release, because it is the trial court that must impose those. And the trial court can be informed, certainly from other places, such as DHS, but it cannot outsource that discretion. If there are no further questions, I would ask that the court reverse in remand for the imposition and modification to allow an individualized conditional release plan for Mr. Butler. Any questions? No. Any questions? I might have missed this, but so is Mr. Butler working or not working? I know he had medical conditions. At this time, he is not working. I believe that he is attempting to obtain SSI income. I'm not sure where the process is for that right now. Okay. Great. All right. Thank you. Okay. Morning. Good morning, Your Honors. May it please the Court, my name is Assistant Attorney General Lauren Schneider representing the people. You may proceed. May it please the Court, Your Honors, Counsel, I think it's important to take a step back and clarify the standard of review here. So as this Court determined in Holt and which it adopted the standard of review in analogous contexts determined by the Illinois Supreme Court, generally conditions of release for sexually violent persons are reviewed for an abuse of discretion. And the SVP Act contemplates the trial court's broad discretion in imposing conditions that best effectuate the SVP Act's purpose of rehabilitation balanced against community safety. While respondent is And if I could just interrupt you for a moment. So here we have a trial court that needs to have an important decision. So if we look at it from a standpoint of abuse of discretion, all right, is it solely upon the trial court that we're looking at or the means by which the trial court is able to obtain the information and the means by which the court is supposed to make its decision? By that, what I mean is the forms that are utilized in this process appear not to be individualized, although they're supposed to be, and they're just generically just pushed out there. And in this case, there was something that was really essentially missing, which was the restriction of visits to the UIC campus. Your Honor, first of all, the trial court does need to have the informed opinions of experts to best determine which plans and which conditions are appropriate for any given respondent. And that is why the SVP Act does require that the respondent be evaluated and that those opinions are taken into account. In this case, two expert psychologists, or I believe one psychologist, one psychiatrist, evaluated Mr. Butler, Dr. Swire, and Dr. Levitt. They did both agree that he meets the statutory definition for a sexually violent person, but that the risk can be effectively managed carefully on conditional release. They also both opined that he presented an above-average risk, and the trial court, in her determination of the plan and which conditions would be appropriate, the trial court did reference both of those opinions and say specifically that she was considering his above-average risk of reoffense. She also followed the procedure that this court set forth in Holt for best informing her discretion. This court said in Holt that it would be beneficial for the respondent as well as the petitioner to both set forth their, first off, the objections that respondent has to a proposed conditional release plan. The petitioner has an opportunity to respond to those objections in writing, and then oral argument was presented before the trial court on those objections. The trial court considered all of that, as well as the extensive record in this case going back years, and determined, based on all of that available evidence, that the CR plan would best effectuate the SVP Act's dual purposes of rehabilitating respondent balanced against protecting the community. Ms. Schneider, what impact can we ascribe to Judge Walton's comments that certain discretionary conditions, quote, come with the territory, end quote? I believe that Judge Walton, Your Honor, was referring in general to the fact that broadly an SVP on conditional release will have to abide by many conditions that, frankly, some of them are onerous. The statute that sets forth 28 mandatory conditions, those in and of themselves are required. In addition to similar restrictions that are applied to sex offenders who must register, it is true that this status, which has been adjudicated beyond a reasonable doubt, does come with certain restrictions on his liberty in movement, and that is for both his rehabilitation and the protection of the community. And what about my question regarding no restrictions with regards to the UIC campus? Yes, Your Honor. You know, this case is replete with the references that that's where he intended to want to go to, and there's no restriction with regards to that. That is true. So I believe at the trial court level the State did not specifically request that restriction, which in this particular case may still be reasonable in that Petitioner, excuse me, Respondent's conditional release agent is still going to be keeping very close tabs on Respondent. And it includes the mandatory conditions do include electronic monitoring,  if the conditional release agent had questions about, for example, noticing that he was, again, frequenting the location of his previous offenses, the CR agent could then inform his care management team and take appropriate action based on any explanation that Mr. Butler may have for those movements. But at the trial court the State did not specifically petition for a restriction that was geographically limited to the UIC campus. The trial court here had imposed, and I believe it was on the State's recommendation, a knowledge component to the restrictions on his condition. Is that still your position with regards to the knowledge component and some of these restrictions that were imposed on him? So the State came to an agreement during that briefing process on the objections and responses to objections. The State came to an agreement with Respondent that it would be, that the State would be amenable to adding an explicit knowledge requirement within some of those conditions just to be absolutely, completely sure that it was clear to Respondent that he would have to know about, for example, if he crossed paths in the hallway with somebody who was a convicted felon or somebody else who fell inside that limited category of persons he's not permitted to interact with, that he would not be punished. However, the trial court reasonably determined that such specificity was simply not necessary, that any reasonable judge reading these conditions and understanding the intent behind them would not so arbitrarily enforce those requirements against him without that specific knowledge component. And two of those conditions were statutory. So they were, the judge clearly did not abuse her discretion by employing in those two instances the statute as written, which did not include a knowledge component. And those discretionary conditions, similarly, it was simply not necessary. And to your knowledge, does DHS basically use the same plan in every case? I can't speak to the specific plan in each and every case. However, it is understandable that many of these plans would have similar conditions because statutorily sexually violent persons often, they are substantially probable to commit future acts of sexual violence because of a diagnosed mental disorder. And many of those diagnosed mental disorders are very similar. At the same time, it is possible that sometimes a clerical error may occur, such as did occur with the case captions. Every once in a while I mistake a case caption in my drafts. And that does not in and of itself invalidate the entirety of a CR plan where at bottom, reviewed properly for an abuse of discretion, really the bottom line conclusion, it should be that as long as no rational person could agree that these don't promote the rehabilitation and safety of the public, if that's a completely arbitrary determination, then these conditions may be an abuse of discretion. But otherwise, they should be upheld. The trial court is in the best position to weigh the evidence, to go back through the record, to consider the expert opinions and the diagnoses that are presented by the parties, and then considering as well the expert input of Liberty Healthcare and the Department of Human Services, who of course are the agencies on the ground to day in, day out, deal with the situations that these special cases present. The trial court does need to take into account what conditions are going to best help an individual respondent with the input from those agencies and departments who are monitoring him. But in this case, aside from the example that you used, the fact that they had another SVP's case number on the form does tend to lead one to believe that this is just a regular happenstance that it takes place, which again, when we're talking about individuals, we're not in an idea with the fact that sometimes everybody might have a similar diagnosis, but we're talking about individuals here, individuals with certain idiosyncrasies, and those idiosyncrasies should be addressed and not just be standardized. Don't you agree? I would agree that the court does take into account a respondent's individual situation, which as your honors observed, was part of the rationale for why, for example, what is the statutorily mandated work requirement was altered in this case, because given his medical conditions, his age, it would not necessarily make sense to mandate, as the Act does, a work requirement for across the board. So that is evidence that in this case the court took into account the respondent's individualized circumstances. Beyond that, many of the statutory conditions are applied without regard to the specific considerations of any given respondent. So that does evidence a policy of overall just the reasonableness of the condition. It should be connected to the rehabilitation of the SVP as well as the safety of the public. What about your opponent's argument that this particular instance actually is in violation of the statute? It doesn't conform with the statute. It doesn't comply with the statute. So he's referring to conditions, I believe, 8 and 19, wherein the language is slightly altered from what was a notification requirement to the department to an approval requirement. So first of all, this does not directly violate the Act, because obviously approval contains within it notification. Something cannot be approved if someone is not notified. The reason to the extent that those conditions impose a higher level of care and control than the threshold that is mandated by statute, that falls within the discretion of the court under Section 40B-5 to impose any other conditions that the court sees fit, as well as Section B-5BB, which is the condition that says the respondent shall abide by any other condition or the rules of the department. So therefore, that falls within the discretion. Now, the court could have repeated the same condition in a new condition and just used the higher language of approval there. But for efficiency's sake, it is simpler to just adjust the language in the corresponding condition to the statute. I'm sorry, you had a question? I was just going to go back to what you were previously arguing about the conditions of release. And don't you agree that they should be the least restrictive, consistent with this person's past acts and the court's commitment order? So again, to have those conditions be individualized based on this person, that kind of belies this notion that you can use somebody else's plan and just incorporate it into this man's plan, right? Yes, Your Honor. And it must be at least restrictive based on this guy and his past acts. Yes, Your Honor. It is important that the court impose a plan that takes into account a respondent's full ñ the fullness of a respondent's situation. That said, the fact that conditions may be imposed across multiple respondents, that in and of itself does not mean that this is not the least restrictive means. Rather, the burden should be on the respondent to show why it is ñ why no rational person would agree with each of these discretionary conditions, which the court has determined do align with the act's purpose. And with respect to this particular respondent, the court did determine that based on the expert opinions, based on the fact that he is of an above-average risk to re-offend, and that both of the experts did agree upon that. And based on the fact that he has spent over a decade in the secure treatment facility and several decades prior to that incarcerated, his ability to cope in the community, she specifically said, is completely untested. So while these conditions, while they are numerous at this time, the idea, the whole purpose of the act, is to step him down gradually as he continues to make progress in his treatment, as well as shows that he is going to abide by the conditions to live a lawful life and that the community will not be endangered by his release. And if I understand correctly, you agree that limiting the access, or I should say third-party access, to the Internet is unconstitutional, correct? No, Your Honor. Limiting third-party ñ excuse me. So the condition that prohibits respondent ñ on their behalf, unless authorized in advance and in writing by an agent, or CMT. I see the wording tripped me up. So that is not unconstitutional. That condition is not unconstitutional, no. It is reasonable. It is rationally connected to the state interests of rehabilitation and public safety in this case. And particularly, it is designed to ensure that a respondent is not just avoiding his own restrictions and the monitoring that is placed on his own Internet access by asking somebody who may be an approved visitor or somebody within his support team to access something that is inappropriate. Just reading the language, it is clear that is the intent behind the condition. And plus, it is even more reasonable following the adjustment of Condition 33, which is the access that he has to the Internet himself for legitimate purposes. You were in agreement, though, that no Internet access was unconstitutional? Yes, Your Honor. Then it should be modified. Yes, Your Honor. So no further questions. Any questions? No. Okay. Ms. Simlop. Yes. The people would respectfully ask that this Court affirm the Circuit Court's order with respect to all of the conditional release conditions, the plan, with the exception of Condition 33, which we ask that this Court remand to the Circuit Court for modification in accordance with this Court's opinion in recommitment of Holt. Thank you. Thank you very much. Rebuttal. I have just one point in rebuttal. The statute, Section 40, gave the Department of Human Services and Liberty 60 days to complete a conditional release plan for Mr. Butler that was individualized. Yet they ignored his prior evaluations. They ignored his prior treatment. They even ignored his prior offending history. If they hadn't, they would have at least proposed something related to the University of Illinois campus, and they did not. Because they did not spend 60 days preparing the plan, they did not even spend 60 minutes preparing it. All they did was change out his name, keep the old case number, and hit print. And under these circumstances involving his substantial liberty interests, this Court should not allow that to stand. Do we know if there was any inquiry by the trial court with regards to how much time DHS spent developing the plan? No, but this case was unusual because they prepared the plan, but Mr. Butler was having a medical procedure, so it even went way past 60 days. And Mr. Butler stayed in custody voluntarily so that he could have his medical procedure until he was released. Any questions? No. Questions? No. Anything else? No, Justice Reyes. Thank you. Okay. Thank you. All right. I want to thank counsels for a very interesting case, also for a well-argued matter. The Court will take it under advisement, and we are adjourned. Thank you. All rise.